UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOYCE DALTON and MICHAEL DALTON,

                  **Plaintiffs,**

       v.                                                        05-CV-452

STEDMAN MACHINE COMPANY, a division
of EAGLE CRUSHER COMPANY, INC.,

                  **Defendant.**[1]
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiffs Joyce and Michael Dalton ("Plaintiffs") commenced this personal injury action in the New York State Supreme Court, St. Lawrence County, asserting claims sounding in strict products liability, negligence, breach of express and implied warranties, and loss of consortium. See Notice of Removal, dkt. # 1. Defendant Stedman Machine Company ("Defendant") removed the action to this Court pursuant to the Court's diversity jurisdiction, id., and now moves for summary judgment pursuant to Fed. R. Civ. P. 56. See dkt. # 82. Plaintiff has opposed the motion. See dkt. # 90. For the reasons that follow, the motion is granted in part and denied in part**.**

---

[1] The Complaint also names Eagle Crusher Company, Inc., and two "John Doe" distributors as defendants. There is no dispute that Stedman Machine Company is a division of Eagle Crusher Company, Inc. Also, Stedman Machine Company was substituted in place of the John Doe defendants by Order dated June 13, 2007. See 6/13/07 Order, dkt. # 71.

1

## II.     STANDARD OF REVIEW

The Court will apply the well settled standard for summary judgment as defined by statute, see FED. R. CIV. P. 56(c), case law, see Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and this Court's Local Rules. See N.D.N.Y.L.R. 7.1.

## III.    APPLICABLE LAW

New York substantive law applies to all claims in this case. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Meyers V. Epstein, 232 F. Supp.2d 192, 195 (S.D.N.Y. 2002); see Def. Mem. L. (applying New York law); Pl. Mem. L. (applying New York law).

## IV.     BACKGROUND

The following facts are arrived at when viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002).

Corning Inc. ("Corning")[2] determined to enter into the business of crushing glass ingots into small particles, melting down the particles, and selling the resulting product. In furtherance of this venture, Corning contacted Defendant to purchase a glass crushing machine for use in Corning's Watertown, New York plant. Def. L.R. 7.1 Stat. ¶¶ 1-2.

Important components of glass crushing machines are grates of powerful magnets designed to extract metal particles from the crushed glass. Metal particles in crushed

---

[2]Corning Inc. was dismissed as a third-party defendant in this action by stipulation on November 27, 2006. See Dkt. # 56.

2

glass are contaminates that negatively affect the purity of the final product. A Corning engineer discussed with Defendant's design engineer Corning's desire for a machine that would yield product with the highest purity and the least amount of iron contaminants. Kellogg Dep. pp. 13-19; Potter Dep. p. 87. "Corning was desirous of a crusher machine that had a cleaning process that was 'most robust' which meant that they (Corning) wanted to have as strong a magnet as possible in the crusher." Def. L.R. 7.1 Stat. ¶ 3; see Def. Exp. Witness Report, Attach. 5.[3] Corning relied on Defendant to design a machine that would meet Corning's requirements. Kellogg Dep. p. 19.

Defendant contacted Eriez Manufacturing Company ("Eriez")[4] to supply a magnetic housing component for the crusher machine Defendant would build for Corning. See Def. Exp. Witness Report § 5 & ¶ 6.3. Representatives of Defendant and Corning considered two types of magnetic housing units suggested by Eriez - one that required that the magnet grates be completely removed from the machine for cleaning, and one that allowed the magnet grates to be pulled out from the machine, like a drawer, to be cleaned

---

[3] A document entitled "Crusher Requirements - Stedman Impactor" is attached to Defendant's expert witness report as Attachment 5. The document is signed by Defendant's project engineer, Aaron Potter. Id. Defendant's expert, Kenneth Meine, assumed at the time that he produced his report that the document was created by Corning, but that belief was challenged at Meine's deposition. See Meine Dep. p. 47. Regardless of which company produced the document, it provides some probative evidence of Corning's requirements. With regard to "Magnetic Separation," the document provides:

-Grate spacing to only allow 0.5 inch particles and smaller to pass through
-Vibration to aid flow
-Must remove weakly magnetic and very fine ferrous material from crushed material

Def. Exp. Witness Report, Attach. 5.

[4] On October 10, 2007, the Honorable Gustave J. DiBianco, United States Magistrate Judge, denied Plaintiffs' motion to amend the Complaint to add Eriez Manufacturing Company as a direct defendant. See 10/03/07 Order, dkt. # 73. Plaintiffs did not appeal that decision to this Court. On January 24, 2008, the Court "So Ordered" the stipulation discontinuing the third-party action against Eriez Manufacturing Company. See Stip. & Order, dkt. # 95.

3

but without being completely removed.  See Plt. L.R. 7.1 Stat. ¶ 5;  Potter Dep. p. 35. Defendant's design engineer, Aaron Potter, was of the understanding that with the pull-out magnet grates "there was still a possibility that some magnetic material could be left on the magnets when it was put back into operation, and that magnetic material could recontaminate the feed stream, the product."  Potter Dep. p. 87.  Corning preferred to have magnets that could be completely removed for cleaning so the operator could "physically see that [the magnets] were clean."  Potter Dep. p. 35.

The crusher machine Defendant designed and ultimately sold to Corning contained rare earth strong magnets that needed to be completely removed to be cleaned. Defendant was aware that Corning's employees would be regularly removing and cleaning the magnet grates in an industrial setting containing ferrous materials. Potter Dep. 52-54. Defendant did not supply a specifically designed non-magnetic cleaning workstation with the machine. Id.  Plaintiff's expert maintains that, given the design and function of the machine, cleaning the magnets was part of the production process, not a maintenance function, and therefore "required a supportive device, (a non-magnetic table), to maintain the machine process [Defendant] provided" and safeguard "the worker's well-being and health."  Plf. Exp. Witness Report, pp. 9-10.

After building the machine but before delivering it, Defendant hosted representatives from Corning for a demonstration of the crusher machine system. Plt. L.R. 7.1 Stat. ¶ 28.  At the demonstration, two grates of the removable magnets snapped together.  At that time, Defendant's design engineer identified a pinch-type hazard with respect to the magnets. Id. ¶ 29.  Defendant's engineer did not consider re-designing the machine to use the non-removable magnets after the pinch-type hazard was identified.

4

Potter Dep., pp. 69-70

When the crusher machine was delivered to Corning it was accompanied by an Instruction and Operation Manual that included the following warning regarding the magnet component:

**CAUTION : STRONG MAGNET**

> This equipment includes one or more extremely powerful magnetic circuits- steel and iron tools and other objects may be attracted suddenly and forcefully to the magnets creating the risk of serious pinch-type injuries. Keep all mild steel and iron tools and equipment well away from the magnets at all times. When handling the equipment, do not allow hands, fingers, and other body parts to be caught between magnets and nearby steel or iron objects.

Def. L.R. 7.1 Stat. ¶ 9. There is no evidence presented on this motion that Plaintiff Joyce Dalton was ever provided this written warning.

Corning employees were instructed to clean the crusher machine's magnets on a table, referred to as the "downdraft table," that had a Teflon surface. Def. L.R. 7.1 Stat. ¶ 12(2). The downdraft table was not supplied by Defendant, and, although the magnets were not attracted to the surface of the downdraft table, they were attracted to its metal sides. Id. ¶ 12(4); Plf. Expert Witness Report, p. 10; see fn. 5, *infra*.

Plaintiff began working in Corning's Watertown plant on June 20, 2004. Prior to the accident of September 3, 2004, Plaintiff was aware that the magnets in the crusher machine were powerful, and she was told: (1) to be careful not to pinch her fingers between the magnets and a metal surface; (2) to clean the magnets on the downdraft table; (3) not to have the magnets come in contact with the metal side of the downdraft table; (4) to be careful lifting the magnets; and (5) to take the magnet grates out of the

5

machine, and clean them, one at a time. Def. L.R. 7.1 Stat. ¶¶ 11-12.[5] Plaintiff had been in the crusher room during a cleaning session three times prior to her injury, and had participated in the actual cleaning on two of those occasions. Plf. L.R. 7.1 Stat. ¶ 34.

On September 3, 2004, while cleaning the crusher machine's magnets, a co-employee placed one of the magnet grates on a metal table. Plt. L.R. 7.1 Stat. ¶ 33. Plaintiff attempted to take the magnet grate to the downdraft table but the grate was "stuck to the [metal] table." Def. L.R. 7.1 Stat. ¶¶ 17-18. Plaintiff then attempted to "shimmy" the grate off the metal table by sliding it back and forth. Id. When she attempted to lift it off the metal table, the grate snapped down pinning Plaintiff's hands to the table. Id. ¶¶ 35-36. It took five (5) men, the use of several screwdrivers and a pry bar to raise the magnet grate enough to allow Plaintiff to free herself. Id. ¶ 37. Plaintiff's ring finger on her right hand was amputated at or around the knuckle. Id. ¶ 38.[6] After Plaintiff's accident, the Corning glass crushing machine was retrofitted to use the non-removable pull-out magnet grate configuration. Id. ¶ 40.

## V. DISCUSSION

"'In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of

---

[5] In a handwritten statement provided during discovery, Plaintiff Joyce Dalton wrote after the accident:

> I pulled out one of three layers of magnets and placed it on the plastic or Teflon part of the downdraft table in the room. I did this procedure before (the accident) and was told before and that day to be careful as they were very powerful magnets. When I picked this up, it even clung to my key, my badge and metal in my clothes. I was also careful as all around the plastic part of the table is 2-3 inches of metal surrounding the Teflon table and these magnets, if too close, snap to that part of the table and with 2-3 inches, it makes removal hard and can pinch your fingers.

[6] Subsequently, Plaintiff underwent a revision of the amputation, trigger release surgery, physical therapy, steroid injection, and treatment for Post Traumatic Stress Disorder. Plt. L.R. 7.1 Stat. ¶ 39.

6

liability': express or implied breach of contract, negligence, or strict products liability." Saladino v. Stewart & Stevenson Services, Inc., 2007 WL 4285377, at * 3 (E.D.N.Y. Dec. 3, 2007) (quoting Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 106 (1983)).  Plaintiffs advance all four theories, and Defendant moves for summary judgment as to each theory.

### a. Strict Products Liability

A strict liability claim arises against a manufacturer, a retailer or a commercial lessor of a product if: 1) the product is defective and; 2) the defect causes the plaintiff's injury. Colon, et al. v. Bic USA, Inc., 199 F. Supp.2d 53, 82 (S.D.N.Y. 2001).   A product may be deemed defective because of a flaw or mistake in manufacturing, because of improper design, or because of the manufacturer's failure to provide adequate warnings regarding use of the product. Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir. 1997)(citing Voss, 59 N.Y.2d at 107).

#### 1. Manufacturing Defect

In asserting a strict liability claim based on a manufacturing defect, Plaintiffs must prove that: 1) when the product left Defendant's control, it deviated in a material way from its design or performance standards; and 2) the defect was a substantial factor in causing Plaintiff's injury.  Topliff  v. WalMart Stores East LP, 2007 WL 911891 (N.D.N.Y. March 22, 2007);  6-232 Warren's Negligence in the New York Courts §232.04[1] (Matthew Bender 2005).   Defendant contends that Plaintiff has established neither.  Plaintiff has not opposed Defendant's motion on this theory[7] and has presented no proof that Defendant's

---

[7]The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, see Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the
(continued...)

glass crushing machine, or its component magnets, deviated in a material way from their design or performance standards when they left Defendant's control. Accordingly, the motion in this regard is granted and the strict liability manufacturing defect claim is dismissed.

### 2. Design Defect

"In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury." Voss, 59 N.Y.2d at 107; see Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 479 (1980)( "[A] defectively designed product is one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce."); Galletta v. Valmet, Inc., 2007 WL 963288 at * 4 (N.D.N.Y. March 30, 2007)(Mordue, C.J.)(To prevail on a design defect claim, a plaintiff "must demonstrate that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.")(quotations marks and citations omitted). Whether a product is unreasonably dangerous generally is a question of fact depending on such issues as the potential for

---

[7](...continued)
Northern District of New York, is deemed consent to granting that portion of the motion. See N.D.N.Y.L.R. 7.1(b)(3); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999) (McCurn, S.J.).

alternative designs, the costs of alternative designs, and the product's usefulness as designed.  Urena v. Biro Mfg. Co., 114 F.3d 359, 364 (2d Cir. 1997)(citing Voss, 59 N.Y.2d at 107).  However, "[w]hen a product is manufactured in accordance with plans and specifications provided by the purchaser, the manufacturer is not liable for an injury caused by an alleged design defect in the product, unless the specifications are so patently defective that a manufacturer of ordinary prudence would be placed on notice that the product is dangerous and likely to cause injury."  Houlihan v. Morrison Knudsen Corp., 2 A.D.3d 493, 494 (2nd Dep't 2003)(citations omitted).

Defendant asserts that Plaintiffs can prove neither a design defect nor causation between Plaintiff's injury and the design of the machine. Plaintiffs contend that the incorporation of the removable magnets, despite the knowledge of and availability of a non-removable option, and the failure to include a non-magnetic cleaning station, constituted design defects that substantially contributed to Joyce Dalton's injuries.

The fact that Corning's crusher machine was retrofitted with the non-removable magnet grate configuration provides some evidence of the feasibility of an alternative design.[8]  This fact, together with the facts, accepted as true for purposes of this motion, that (1) Defendant was aware that Corning's employees would be regularly removing and cleaning the magnet grates in an industrial setting containing ferrous materials, (2) Defendant did not supply a specifically designed non-magnetic cleaning workstation, (3)

---

[8] It is unclear from the parties' Local Rule 7.1 Statements whether the alternative magnet grate configuration satisfied Corning's requirement for purity.  Defendant's expert, who examined Corning's crusher system after it was retrofitted, appears to indicate that the pull-out grates do satisfy the requirement "to remove weakly magnetic and very fine ferrous material from crushed material." See Def. Exp. Wit. Report, ¶ 2.3.4, ¶ 3.3.  Viewing the evidence in the light most favorable to Plaintiffs, and drawing reasonable inferences in their favor, the Court concludes for purposes of this motion that the alternative configuration reasonably satisfied Corning's requirements.

Defendant was aware of the strength of the magnets, and (4) Defendant identified a pinch-type hazzard from the removable magnet grates before the machine left its control, provide sufficient evidence from which a fact finder could reasonably conclude that the removable magnet configuration was unreasonably dangerous in light of available alternative designs.

While this conclusion is potentially countered by evidence that the Corning crusher machine was designed with the magnet grate configuration desired by Corning, the weight of this countervailing evidence is minimized by evidence that Corning was new to the glass crushing business and relied on Defendant to design a machine that met Corning's requirements.  Viewing the evidence in the light most favorable to Plaintiffs, a fact finder could reasonably conclude that Corning did not specify that removable magnets be used but simply acquiesced in Defendant's design plan based on Defendant's representations about the ability to clean removable and non-removable grates.  Thus, a fact finder could conclude that the product was not "manufactured in accordance with plans and specifications provided by the purchaser."  Houlihan, 2 A.D.3d at 494.  Assuming for purposes of this motion that the pull-out but non-removable magnet grate configuration was capable of accomplishing Corning's purity goals, see fn. 8, *supra*, and considering the pinch-type hazard identified at the pre-delivery demonstration, a fact finder could reasonably conclude that "the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." Voss 59 N.Y.2d at 108.

Even assuming that the crusher machine was manufactured in accordance with plans and specifications provided by Corning (*i.e.* assuming that Corning specified that the removable magnet configuration be used), a fact finder could conclude that, after the

10

pinch-type hazard was identified, a manufacturer of ordinary prudence would be placed on notice that the product, as designed, was dangerous and likely to cause injury. This is supported by evidence suggesting that Defendant knew that Corning's production process necessitated frequent removal of the powerful magnets for cleaning in an industrial setting but that a specifically-designed non-magnetic cleaning station was not provided. Thus, there is evidence upon which to conclude that there was a design defect in the crusher machine.

Further, a fact finder could reasonably conclude that the design of the machine requiring complete removal of the magnet grates was a substantial factor in causing Plaintiff's injuries despite her awareness of the danger of pinch-type injuries from handling the magnets outside the machine. Accordingly, a genuine question of material fact exist on the issue of proximate cause between the design of the machine and Plaintiff's injuries. See Garnsey v. Morbark Indus., Inc., 971 F. Supp. 668, 672-673 (N.D.N.Y. 1997)(McAvoy, C.J.)(proximate cause is generally a question for the fact finder to resolve)(citations omitted).

Defendant's motion on the strict liability design defect claim is denied.

### 3.     Warning Defect

Under New York law, a plaintiff may assert that a product is defective because the manufacturer failed to provide adequate warnings regarding the risks and dangers associated with the use, or foreseeable misuse, of its product. Urena v. Biro Mfg. Co., 114 F.3d 359, 365 (2d Cir. 1997); see also Liriano v. Hobart Corp., 92 N.Y.2d 232, 238

(1998).[9]  The adequacy of the warning is generally a question of fact for the jury to decide, and "is not ordinarily susceptible to the drastic remedy of summary judgment." Urena, 114 F.3d at 366 (citing Beyrle v. Finneron, 199 A.D.2d 1022, 1023, 606 N.Y.S.2d 465, 466 (4th Dep't 1997)).  However, "there is no duty to warn of an open and obvious danger of which the product user is actually aware or should be aware as a result of ordinary observation or as a matter of common sense." Feele v. W.W. Grainger, Inc., 302 A.D.2d 971, 972 (4th Dep't 2003)(citing Liriano, 92 N.Y.2d at 241-242); see Lamb v. Kysor Indus. Corp., 759 N.Y.S.2d 266, 268 (4th Dep't 2003)("The open and obvious nature of that risk negates any duty to warn on the part of defendants.")(citations omitted).  Plaintiff has a duty to both discover and avoid the injury in the exercise of reasonable and ordinary care.  See Fane, 927 F.2d at 128.  In this regard, the New York courts hold that if "'a manufacturer's warning would have been superfluous given an injured party's actual knowledge of the specific hazard that caused the injury,' the Court may, as a matter of law, grant summary judgment." Marshall v. Sheldahl, Inc., 150 F. Supp.2d 400, 405 (N.D.N.Y. 2001)(quoting Liriano, 92 N.Y.2d at 241).

There is no dispute that Plaintiff was aware of the danger of pinch-type injuries when the magnets came close to metal objects.  A reasonable fact finder could conclude that, given Plaintiff's awareness of this danger, it was, or should have been, obvious to Plaintiff that attempting to remove the magnet grate from an all-metal table was itself a

---

[9] A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. A manufacturer also has a duty to warn of the danger of unintended uses of a product provided these uses are reasonably foreseeable.

Liriano, 92 N.Y.2d at 238 (citations omitted).

dangerous endeavor. However, Plaintiff's interaction with the magnet grates prior to her injury appears to have been limited to 2 or 3 instances when the magnet grates were moved from the machine, cleaned on the Teflon downdraft table, and returned to the machine. While Plaintiff was aware that the grates would pull toward the metal sides of the downdraft table and attract toward her keys and badge, she may have been unaware of the full extent of the power exerted when the magnet grates interfaced with a large metal object the size of the table on which her co-employee placed the grate. Thus, she may have been unaware of the specific hazzard that caused her injuries. See Galletta, 2007 WL 963288, at * 7.[10] Put another way, "reasonable minds might disagree as to the extent of plaintiff's knowledge of the hazard" that caused her injury. Brady v. Dunlop Tire Corp., 275 A.D.2d 503, 505 (3d Dep't 2000). A fact finder could reasonably conclude that additional warnings were necessary to provide instructions for handling the magnets when misused in a foreseeable way, such as when placed on an all-metal table.

Given Plaintiff's limited interaction with the magnet grates and the potential that she was unaware of the dangers associated with the misuse of the magnets during the cleaning process, there is a question of fact as to whether the lack of warnings was a

---

[10]Chief Judge Mordue wrote in Galletta:

> The subjective knowledge envisioned by Liriano is the "injured party's actual knowledge of the specific hazard that caused the injury." 92 N.Y.2d at 241 (emphasis added). . . . In this case it is undisputed that plaintiff was a novice insofar as performing or assisting in the paper splicing procedure involved in his accident. There is also a suggestion in the record that plaintiff's inexperience and/or lack of knowledge was the cause of his failure to avoid contact with the nip point of which he was indisputably keenly aware. . . . Although plaintiff himself did not testify about or present evidence concerning what additional knowledge, training or warnings would have prevented his accident, the Court cannot say that defendant has excluded all possibility that plaintiff might prove his claim as a matter of law.

Galletta, 2007 WL 963288, at * 7.

13

substantial cause of Plaintiff's injuries.  See Ferracane v. U.S., 2007 WL 316570, at * 7 (E.D.N.Y. Jan. 30, 2007).[11]  Accordingly, Defendant's motion on the strict products liability failure-to-warn claim is denied.

### B.    Negligence

"To make out a *prima facie* case for negligence in New York, Plaintiff must show: (1) that the manufacturer owed [her] a duty to exercise reasonable care; (2) breach of that duty so that a product is rendered defective, *i.e.*, reasonably certain to be dangerous; (3) that the defect was the proximate cause of plaintiff's injury; and (4) loss or damage." Galletta, 2007 WL 963288, at * 3 (citing McCarthy v. Olin Corp., 119 F.3d 148, 156 (2d Cir. 1997)).

> Generally, New York courts treat strict products liability and negligence claims as substantively similar. See Denny v. Ford Motor Co., 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 255, 662 N.E.2d 730 (1995) ("[T]he strict liability concept of defective design [is] functionally synonymous with the earlier negligence concept of unreasonable designing.") (internal quotation marks and citations omitted; brackets in original); Enright by Enright v. Eli Lilly & Co., 77 N.Y.2d 377, 387, 570 N.E.2d 198, 203, 568 N.Y.S.2d 550,

---

[11] As noted by the Eastern District in Ferracane:

"In duty to warn cases, New York recognizes two circumstances that would preclude a finding of proximate cause: obviousness and the knowledgeable user." Andrulonis v. United States, 924 F.2d 1210, 1222 (2d Cir.), vacated on other grounds sub nom. New York State Dep't of Health v. Andrulonis, 502 U.S. 801, and reinstated following remand, 952 F.2d 652 (2d Cir.1991); see also Colon, 199 F. Supp.2d at 85 (quoting Hutton v. Globe Hoist Co., 158 F. Supp.2d 371, 376 (S.D.N.Y.2001)).

* * *

"[T]he knowledgeable user exception applies only where the user is actually aware of the precise danger involved." Andrulonis, 924 F.2d at 1223.  Indeed, the user must not only know of the particular risk he or she faces, but must also be aware of the severity of the potential harm. See Donald v. Shinn Fu Co., No. 99-CV-6397 (ARR), 2002 WL 32068351, at *9 (E.D.N.Y. Sept. 4, 2002) (citing Billiar v. Minnesota Mining & Mfg. Co., 623 F.2d 240, 244 (2d Cir. 1980)).

Ferracane, 2007 WL 316570, at * 7.

> 555 (1991) ("Failure to warn claim ... though it may be couched in terms of strict liability, is indistinguishable from a negligence claim."). However, the Second Circuit has characterized this aspect of New York products liability as unsettled because the New York Court of Appeals has yet to affirmatively hold that negligence and strict liability have been effectively merged. Jarvis v. Ford Motor Co., 283 F.3d 33, 63 (2d Cir. 2002).

Saladino, 2007 WL 4285377, at * 4.

Since the Second Circuit has expressed no opinion on how the New York Court of Appeals would rule on this issue, several courts have analyzed plaintiffs' negligence and strict products liability claims under a single test. Id. (citing cases); Galletta, 2007 WL 963288, at * 4.  This Court will do the same.  Doing so, and the for the reasons set forth above with regard to the design defect and the failure-to-warn strict products liability claims, Plaintiffs have set forth viable negligence claims based on the same theories. Accordingly, the motion is denied as to the negligence claims premised upon a design defect and a failure-to-warn defect.  The motion is granted as to Plaintiffs' negligence claim premised upon a design defect.

### C.     Breach of Express and Implied Warranty

Plaintiffs contend that Defendant breached its express and implied warranties that the crusher machine would be fit for its intended purpose.  See Compl. ¶¶ 62-76.

#### 1.     Breach of Express Warranty

Defendant moves to dismiss the breach of express warranty claim on the ground that Plaintiffs fail to adduce evidence that Defendant made any affirmations of facts, promise or description regarding the crusher machine. See N.Y. U.C.C. § 2-313(1)(a)-(c);

Ferracane, 2007 WL 316570, at * 8.[12]  Plaintiffs have not opposed this portion of the motion and have failed to submit any evidence upon which a reasonable fact finder could find in their favor on the breach of express warranty claim.  Accordingly, the motion on this claim is granted and the claim is dismissed. Ferracane, 2007 WL 316570, at * 8; see fn. 7, *supra*.

### 2. Breach of Implied Warranty

Based on Plaintiffs' contention that Defendant breached the implied warranty that the crusher machine would be fit for its intended purpose, Defendant presumes that the claim is brought under the implied warranty of merchantability governed by New York Uniform Commercial Code § 2-314.  See N.Y. U.C.C. § 2- 314(2)(c)(To be merchantable, goods must be, among other things, "fit for the ordinary purposes for which such goods are used.").  Defendant argues that Plaintiffs' claim must failed because they have presented no evidence that the crusher machine was not fit for its intended purpose. Def. Mem. L. pp. 13-14.  Plaintiffs have not identify whether the claim is brought under the implied warranty of merchantability or the implied warranty of fitness for a particular

---

[12] As explained by the Eastern District in Ferracane,

> Section 2-313 of the Uniform Commercial Code sets forth the three ways in which an express warranty by a seller can be created. First, "[a]ny affirmation of fact or promise made by the seller to [a] buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). Second, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1)(b). Third, "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model. N.Y. U.C.C. § 2-313(1)(c).

2007 WL 316570, at *8.

purpose governed by New York Uniform Commercial Code § 2-315,[13] but simply argue that "because cleaning the magnets was an anticipated and integral part of the usual and intended manner in which the system was to be used, Stedman impliedly warranted that its system was sufficiently safe for that purpose, but it was not." Pl. Mem. L. p. 14.

> The [New York] Court of Appeals has held that liability under strict products liability and implied warranty theory are essentially the same, except that under the implied warranty theory, it is not necessary to show the feasibility of alternative designs or the manufacturer's "reasonableness" in marketing it in the unsafe condition (see Denny v. Ford Motor Co., 87 N.Y.2d 248, 258-259 [1995] ). And, in most cases, as a practical matter, the distinction between the defect concepts in tort law and in implied warranty theory has little or no effect (id. at 262).

Olivier v. Kirby & Allen, Inc., 2007 WL 3118763, at * 4 (N.Y. Sup. Ct. Oct. 15, 2007); see Searle v. Suburban Propane Div. of Quantum Chemical Corp., 263 A.D.2d 335, 339 (3rd Dep't 2000).[14] Although based on contract law, no showing of privity is required in personal injury actions for breach of implied warranty. Inter Impex S.A.E. v. Comtrade Corp., 2004 WL 2793213, at * 5 (S.D.N.Y. Dec. 6, 2004)(citations omitted).

In order to succeed on an implied warranty claim, Plaintiffs must establish: "(1) that

---

[13] New York Uniform Commercial Code § 2-315 provides, in relevant part: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose."

[14] As explained by the New York Appellate Division, Third Department:

although the establishment of the strict products liability remedy significantly diminished the need to rely on claims based upon an implied warranty theory, and the available defenses and limitations periods may differ, there remains "a high degree of overlap between the substantive aspects of the two causes of action" (Denny v. Ford Motor Co., supra, at 256, 639 N.Y.S.2d 250, 662 N.E.2d 730). "As a practical matter, the distinction between the defect concepts in tort law and in implied warranty theory may have little or no effect in most cases" (id., at 262, 639 N.Y.S.2d 250, 662 N.E.2d 730; see, Winckel v. Atlantic Rentals & Sales, 159 A.D.2d 124, 557 N.Y.S.2d 951).

Searle, 263 A.D.2d at 339.

the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." Plemmons v. Steelcase Inc., 2007 WL 950137, at * 3 (S.D.N.Y. March 29, 2007)(citations omitted). "In short, the implied warranty is breached where the product in question is not fit for the ordinary purpose for which it is to be used." Id. (citing Denny v. Ford Motor Co., 662 N.E.2d 730, 736 (N.Y. 1995) and N.Y. U.C.C. § 2-314(2)(c)).

In this case, "[a]s there exist questions of fact as to design defect under strict liability, there also exist similar issues of fact under the breach of warranty standard." Olivier, 2007 WL 3118763, at * 4. Accordingly, Defendant's motion on this claim is denied.

## VI.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment [dkt. # 82] is **GRANTED IN PART AND DENIED IN PART**.

The motion is **GRANTED** as to the following claims, which are **DISMISSED**: (1) strict liability claim based on a manufacturing defect; (2) negligence claim based on a manufacturing defect, and (3) breach of express warranty claim. The motion is **DENIED** in all other respects.

**IT IS SO ORDERED**

DATED: February 6, 2008

Thomas J. McAvoy
Senior, U.S. District Judge

19